**United States District Court**
**District of Massachusetts**

```
_____
                                )
TUTOR PERINI CORPORATION,       )
                                )
          Plaintiff,            )
                                )
          v.                    )
                                )   Civil Action No.
BANC OF AMERICA SECURITIES LLC, )   11-10895-NMG
now known as Merrill Lynch,     )
Pierce, Fenner & Smith Inc.,    )
successor by merger, and        )
BANK OF AMERICA, N.A.,          )
                                )
          Defendants.           )
_____)
```

<u>MEMORANDUM & ORDER</u>

GORTON, J.

This case arises out of unsuccessful investments made by defendant Banc of America Securities LLC ("BAS"), allegedly with the knowledge and acquiescence of co-defendant Bank of America, N.A. ("BANA"), on behalf of plaintiff Tutor Perini Corporation ("Tutor Perini") in a kind of security known as auction rate securities ("ARS").

Pending before the Court are defendants' motion for summary judgment and plaintiff's motion for partial summary judgment. For the reasons that follow, defendants' motion will be allowed and plaintiff's motion will be denied.

I.    **Background**

A.    **The parties**

Tutor Perini is a building construction company incorporated in Massachusetts and headquartered in California. It opened a non-discretionary, investment-brokerage account with defendant BAS in 2004.  Between May, 2007 and February, 2008, plaintiff was a Qualified Institutional Buyer under the Securities Act of 1933 because it owned or invested at least $100 million on a discretionary basis.

Defendant BANA is a bank registered in Delaware with a principal place of business in North Carolina.  It is a wholly-owned subsidiary of Bank of America Corporation, a major global banking institution.

Defendant BAS, now known as Merrill Lynch, Pierce, Fenner & Smith, Incorporated, is also a wholly-owned subsidiary of Bank of America Corporation and was, at all relevant times, an investment banking company registered as a broker-dealer with the Securities and Exchange Commission.

B.    **Auction rate securities**

ARS are a form of bond that have long-term maturity periods of up to 40 years.  They pay interest at rates that are reset at regular intervals of, typically, 7, 28 or 35 days.  That enables issuers to access long-term financing at short-term rates.

Interest rates for ARS are set by a "Dutch auction," wherein prospective purchasers submit bids through their broker-dealer to an auction agent.  Each bid consists of the par value of the securities that the buyer wishes to purchase and the minimum interest rate that the buyer is willing to accept. Successively higher bids are then accepted until all the ARS for sale are covered.  The interest rate of the highest bid necessary to cover all of the sell orders is known as the clearing rate.

Each ARS is subject to a cap on the highest possible clearing rate, also known as a maximum rate, which is either a fixed number or determined by a formula based upon indices such as the London Interbank Offered Rate ("LIBOR").  The ARS at issue in this case are student loan ARS ("SLARS") which did not have fixed maximum rates but rather maximum rates determined by a formula.

An auction is considered successful if there are sufficient bids below the maximum rate so as to allow for the sale of all of the outstanding securities.  In contrast, a failed auction occurs when the number of bids below the maximum rate cannot guarantee the sale of all of the securities offered for sale. In such an event, holders of ARS who have offered to sell their shares must continue to hold those securities until the next successful auction.

Authorized broker-dealers have, however, the discretion to place "support bids," which are bids to purchase ARS for their own accounts to prevent auctions from failing.  When auctions fail, holders of ARS continue to collect interest at the maximum rate.

**C.  Plaintiff's entry into the ARS market and BAS's disclosures**

In 2004, Tutor Perini opened a non-discretionary BAS investment-brokerage account.  Plaintiff's Treasurer Susan Mellace ("Ms. Mellace") made daily investment decisions under the oversight of its President Robert Band and CFO Kenneth Burk. Lois McGrath ("Ms. McGrath") was the BAS account representative assigned to plaintiff's account.

In May, 2006, BAS published general ARS disclosures on its public website which 1) warned that auctions could fail, 2) explained that BAS "routinely" bids in auctions to prevent auction failures even though it is not obligated to do so and "[i]nvestors should not assume that BAS will place a bid...or that Failed Auctions...will not occur" and 3) described the maximum-rate feature resulting from an auction failure.

Plaintiff purchased its first SLARS in September, 2007 after which Ms. Mellace received 1) an email attaching "Important Auction Rate Securities Disclosures," 2) a trade confirmation noting that the SLARS have a 2036 maturity date and

-4-

3) a spreadsheet reflecting the specific maximum-rate formulas for various SLARS.

In December and January, 2007, after liquidating more than $100 million of ARS, plaintiff purchased the eight SLARS at issue in this case ("the eight SLARS").  The collateral underlying six of them was backed by the federal government while the other two were insured by Ambac, a monoline bond insurer ("Ambac-Wrapped SLARS").  The prospectuses of the eight SLARS warned that auction failures are especially likely

> if an issuer's credit were to deteriorate, a market
> disruption were to occur or if, for any reason, the
> broker-dealers were unable or unwilling to bid.

### D.   Collapse of the ARS market

In the fall of 2007, interest rates for ARS increased due to reduced investor demand.  At the same time, major indices upon which the maximum rates were based for the ARS at issue were trending downward.  Because auction failure was more likely when maximum rates fell below market rates, many issuers implemented waivers to raise temporarily the maximum rates on their ARS.  BAS and other broker-dealers also began placing support bids with increasing frequency.

In early 2008, Ms. McGrath alerted plaintiff to adverse Ambac-related news, such as the downgrade of Ambac's credit rating from AAA to AA and a report that the company had a likelihood of going bankrupt.  Tutor Perini nevertheless placed

hold orders for the Ambac-Wrapped SLARS on January 17 and
February 5, 2008.

On February 6, 2008, certain executives at BAS prepared a
memorandum seeking permission from management to increase ARS
inventory levels in order to relieve some balance sheet
pressure.  BAS management assented to that request.

Between February 7 and February 12, 2008, however, seven
prominent broker-dealers decided to withhold supporting bids in
all SLARS auctions and allowed them to fail.  On February 13,
2008, BAS followed suit and withdrew its support for SLARS as
well.

At the time of the market collapse, Tutor Perini held in
its account at BAS ARS with a face value of nearly $200 million.
During the succeeding four years, plaintiff struggled to
liquidate more than one half of its ARS portfolio at par value.
It subsequently resorted to selling the eight SLARS on the
secondary market for an average of 95% of par value for the six
backed by the federal government and 37% of par value for the
two Ambac-Wrapped SLARS.

### E.   Alleged misconduct by BAS

Tutor Perini alleges that between September, 2007 and
February, 2008, defendants made misrepresentations and material
omissions with respect to, _inter alia_, 1) the state of the ARS
market, 2) the frequency BAS obtained ARS maximum rate waivers

and 3) the increased submissions of auction-support bids by BAS that led to a tripling of its ARS inventory by the end of 2007. Plaintiff contends that it was not properly informed of all material facts relating to the ARS market and was therefore misled about the risk of investing in SLARS during that time period.

## II.  **Procedural History**

Plaintiff initiated this lawsuit in May, 2011 asserting claims against defendants for 1) securities fraud, in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) ("the Exchange Act") and Rule 10b-5 promulgated thereunder (Count I), 2) intentional misrepresentation (Count II), 3) fraudulent concealment (Count III), 4) negligent misrepresentation (Count IV), 5) violation of M.G.L c. 93A ("Chapter 93A") (Count V), 6) civil conspiracy (Counts VI-VII), 7) violation of the Massachusetts Uniform Securities Act ("MUSA"), M.G.L. c. 110A (Count VIII), 8) breach of contract (Count IX) and 9) conversion (Count X).

In November, 2011, defendants moved to compel arbitration. That motion was referred to Magistrate Judge Judith G. Dein and in June, 2012, she denied defendants' motion.

In August, 2012, defendants filed a motion to dismiss which was referred to Magistrate Judge Dein for a Report & Recommendation ("R&R").  In July, 2013, Magistrate Judge Dein

entered an R&R recommending the allowance of defendants' motion to dismiss with respect to Counts VI, VII, IX and X of plaintiff's complaint.  The Court accepted and adopted the R&R in September, 2013.

Following comprehensive discovery, the parties filed their motions for summary judgment in May, 2015.  Trial is currently scheduled to commence on September 14, 2015.

### III. Motions for Summary Judgment

#### A.  Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

-8-

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### B.  Defendants' motion for summary judgment

#### 1.  Claims against BANA

Defendants contend that BANA is entitled to summary judgment on every claim because all of the activity at issue occurred at BAS and plaintiff has failed to identify any misconduct by BANA.  The Court agrees.

Although plaintiff asserts in its opposition to defendants' motion for summary judgment that BANA is liable as a controlling person, it has not made that claim in its pleadings.  Tutor Perini may not "raise new claims for the first time in submissions in opposition to summary judgment." Bonnie & Co. Fashions v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D.N.Y. 1997).  Moreover, although plaintiff lists four people involved

in analyzing maximum rate waivers and liquidity risks who were employed by BANA or jointly employed by both BANA and BAS, it has failed to provide any facts indicating that BANA exercises control over BAS. See Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002) (noting that "the alleged controlling person must not only have the general power to control the company, but must also actually exercise control over the company").

Accordingly, defendants' motion for summary judgment with respect to plaintiff's claims against BANA will be allowed.

### 2. Misrepresentation (Counts II and IV)

Tutor Perini claims that BAS misrepresented 1) the long-term nature of ARS, 2) the effect of auction failures in August, 2007 on SLARS, 3) the reason that it sold ARS at a discount in late 2007 and 4) that it would continue to submit auction-support bids.

Plaintiff's opposition to defendants' motion for summary judgment does not, however, respond to defendants' arguments refuting the allegations of misrepresentation. See Evans v. Holder, 618 F. Supp. 2d 1, 13 (D.D.C. 2009) ("where a non-moving party fails to oppose arguments set forth in a motion for summary judgment, courts may treat such arguments as conceded"). Plaintiff does not appear to dispute defendants' contentions that

1) BAS made ARS disclosures that ARS auctions could
   fail and that the eight SLARS had maturities of
   between 30 and 40 years,

2) with respect to the August, 2007 auction failures
   for several ARS with exposure to subprime-mortgage
   assets, there is no evidence that Ms. McGrath told
   Ms. Mellace anything about their potential effect on
   SLARS liquidity or that those auction failures had
   any effect on the eight SLARS,

3) Ms. McGrath accurately informed Ms. Mellace that BAS
   sold certain ARS at a discount when it "wanted to
   get rid of" them, and

4) the alleged assurances made by BAS in September,
   2007 and on February 12, 2008 that it would continue
   to place SLARS support bids is not actionable
   because BAS continued to support the auctions until
   several other major broker-dealers decided to
   withdraw their bids in mid-February, 2008 and Tutor
   Perini understood that BAS could withdraw support
   bidding at any point.

Plaintiff also fails to identify any false statements made

by BAS, see Amorim Holding Financeria, S.G.P.S., S.A. v. C.P.

Baker & Co., 53 F. Supp. 3d 279, 300 (D. Mass. 2014) (noting

that "for a misrepresentation to be actionable, it must have, in

fact, been false"), and instead emphasizes that the crux of this

case "relate[s] to BAS's failure to disclose current material

facts" with respect to the heightened risk of SLARS auction

failures.

Summary judgment in favor of defendants with respect to

Counts II and IV will therefore be allowed.  Furthermore,

summary judgment in favor of defendants as to plaintiff's

securities fraud claims in Counts I and VIII will be allowed to the extent they rely on a BAS misrepresentation.

### 3.   Securities fraud (Count I)

Section 10(b) of the Securities Exchange Act and Rule 10b-5 make it unlawful for any person 1) to employ any device, scheme or artifice to defraud, 2) to make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading or 3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

### a.   Omissions

In order to prevail under Section 10(b) and Rule 10b-5 based on misrepresentations and omissions, plaintiff must prove 1) a material misrepresentation or omission, 2) scienter, 3) a connection with the purchase or sale of a security, 4) reliance, 5) economic loss and 6) loss causation. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

Plaintiff does not appear to pursue its misrepresentation argument and its omission claim is essentially that BAS materially omitted to disclose a number of facts relating to the ARS market that rendered plaintiff unable fully too appreciate the heightened risk of ARS auction failure.  Tutor Perini

-12-

contends that BAS concealed 1) the frequency of auction-support bids, 2) its rising ARS inventory, 3) the maximum rates of the eight SLARS and the difference between those rates and the securities' clearing rates, 4) that SLARS issuers obtained maximum-rate waivers, 5) other ARS auction failures between August, 2007 and February, 2008 and 6) its alleged mid-December, 2007 contingency plan to allow auctions to fail selectively.

The Court concludes that the alleged omissions were, in fact, disclosed to the plaintiff and/or in publicly available documents.  "It is indisputable that there can be no omission where the allegedly omitted facts are disclosed." In re JP Morgan Auction Rate Sec. (ARS) Mktg. Litig., 2014 WL 4953554, at *17 (S.D.N.Y. Sept. 30, 2014).  At the motion to dismiss stage, the Court accepted and adopted Magistrate Judge Dein's recommendation to exclude BAS's ARS disclosures from consideration.  The Court will now, however, consider all materials in the record in deciding the motions for summary judgment. Fed. R. Civ. P. 56(c)(1).

With respect to the support bidding, it is undisputed that BAS disclosed that 1) it "routinely" placed bids that "may be designed to prevent a Failed Auction" and 2) it "may discontinue trading in the securities without notice for any reason at any time."  Plaintiff also had access to information relative to the extent of BAS's ARS inventory levels and to the maximum rates

and clearing rates of the eight SLARS through an online-banking platform and spreadsheets sent to plaintiff reflecting the par amount of all ARS in BAS's inventory.  Although it might have been difficult to calculate the fluctuating maximum rates, federal securities laws require

> nothing more than the disclosure of basic facts so that outsiders may draw upon their own evaluative expertise in reaching their own investment decisions[.]

Sec. & Exch. Comm'n v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir. 1968).  Furthermore, BAS has demonstrated that various news outlets reported on and plaintiff received information from BAS about various failed auctions between August, 2007 and February, 2008.  The allegedly concealed waivers were also disclosed in multiple public news articles.

Plaintiff's federal claim for securities fraud fails for the additional reason that plaintiff cannot prove reasonable reliance.  Contrary to plaintiff's assertion, there is no presumption of reliance with respect to an omission of a material fact in absence of a duty to disclose. Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 159 (2008).  Although a party "who discloses partial information that may be misleading has a duty to reveal all the material facts" to avoid deceiving the other party, plaintiff does not contend that BAS's disclosures themselves were misleading. V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 414 (1st Cir.

1985).  Instead, it avers that additional market information
suggesting heightened risk of auction failure should have been
disclosed.

Tutor Perini is, however, a sophisticated Qualified
Institutional Buyer that received numerous written disclosures
about the risks of auction failure.  Because that risk was
disclosed accurately, there is no duty to disclose all facts
reflecting the degree of risk. See Hill v. Gozani, 638 F.3d 40,
60 (1st Cir. 2011) ("To the extent that the plaintiff's
complaint is that the precise degree of risk was not stated,
that failure is not sufficient to have rendered the statements
misleading."); see also Mississippi Pub. Employees' Ret. Sys. v.
Boston Scientific Corp., 649 F.3d 5, 29 (1st Cir. 2011) ("we
shall hesitate to conclude that disclosure is misleading merely
because it did not state that the risk was serious").
Therefore,

> [i]n view of this clear representation, Plaintiff cannot
> reasonably rely on an assumption that the market for
> [SLARS] would remain liquid regardless of [BAS's] bids,
> or that [BAS] would act as a good Samaritan and secure
> auction successes purely for others' welfare.

Pivot Point Capital Master LP v. Deutsche Bank AG, 2010 WL
9452230, at *5 (S.D.N.Y. Dec. 9, 2010).

Plaintiff attempts to distinguish its case by claiming that
the cases cited by BAS involved only misrepresentations by
defendant rather than material omissions.  That is incorrect.

-15-

For example, in <u>Ashland Inc.</u> v. <u>Morgan Stanley & Co.</u>, the Second Circuit Court of Appeals affirms the district court's dismissal of the case "on the ground that [plaintiffs] cannot plead reasonable reliance" and notes that

> [i]n addition to alleging that [defendant] misrepresented the safety and liquidity of the SLARS, the FAC [first amended complaint] also alleges the following pertinent omissions. [Defendant] failed to disclose: (i) how often demand failed to meet supply in SLARS auctions, and consequently, how often it had to step in to purchase the SLARS; (ii) that the government guarantee and non-dischargeability in bankruptcy of the underlying student debt obligations were unrelated to the SLARS' liquidity; (iii) the relationship between fail rates, AAA ratings, and liquidity; and (iv) that it was not fully committed to ensuring liquidity of the SLARS.

<u>Ashland Inc.</u> v. <u>Morgan Stanley & Co.</u>, 652 F.3d 333, 335-36 (2d Cir. 2011); <u>see also</u> <u>In re Bank of Am. Corp.</u>, 2011 WL 740902, at *14 (N.D. Cal. Feb. 24, 2011) ("Contrary to Lead Plaintiffs' conclusory allegations that they could not, with reasonable diligence, have discovered the information about BAS' placement of support bids or the impact BAS could have on the clearing rate, all of the information described above was in the public domain and available to Lead Plaintiffs...they fail to allege facts demonstrating that reliance was justifiable").

### b.  Unsuitability

Plaintiff's alternative theory for liability under Section 10(b) is that BAS sold securities that were unsuitable to Tutor

Perini's conservative investment objectives.   To prove that claim, plaintiff must show

> (1) that the securities purchased were unsuited to the buyer's needs; (2) that the defendant knew or reasonably believed the securities were unsuited to the buyer's needs; (3) that the defendant recommended or purchased the unsuitable securities for the buyer anyway; (4) that, with scienter, the defendant made material misrepresentations (or, owing a duty to the buyer, failed to disclose material information) relating to the suitability of the securities; and (5) that the buyer justifiably relied to its detriment on the defendant's fraudulent conduct.

Brown v. E.F. Hutton Grp., Inc., 991 F.2d 1020, 1031 (2d Cir. 1993).

As an initial matter, "[s]ophisticated investors have difficulty establishing suitability claims." Cremi v. Brown, 955 F. Supp. 499, 518 (D. Md.) aff'd sub nom. Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017 (4th Cir. 1997). Moreover, the suitability claim may be barred because plaintiff held a non-discretionary brokerage account whereby it directed all the investments made. See Associated Randall Bank v. Griffin, Kubik, Stephens & Thompson, Inc., 3 F.3d 208, 212 (7th Cir. 1993) ("Customer-directed transactions fall outside the "suitability" requirement—especially if the agent provides the customer with a prospectus or comparable information.").

In any event, plaintiff cannot prove its unsuitability claim on the merits because 1) BAS provided prospectuses for the eight SLARS that specifically cautioned that ARS may be

-17-

unsuitable "if you require a regular or predictable schedule of payments" and 2) the Court has already concluded, as a matter of law, that BAS did not make material misrepresentations or breach a duty to disclose material facts.

Accordingly, defendants' motion for summary judgment with respect to Count I will be allowed.

### 4. Fraudulent concealment and Chapter 93A (Counts III and V)

For substantially the same reasons underlying the Court's determination to allow summary judgment with respect to Count I, i.e., the failure to demonstrate the alleged omissions of material facts, the Court will allow defendants' motion for summary judgment as to plaintiff's claims for fraudulent concealment (Count III) and violation of Chapter 93A due to "unfair methods of competition and unfair or deceptive acts or practices" (Count V).

### 5. Massachusetts Uniform Security Act (Count VIII)

Section 410(a)(2) of MUSA imposes civil liability on any person who offers or sells a security "by means of any untrue statement of material fact" or statement that is misleading due to omissions of material facts. M.G.L. c. 110A, § 410(a)(2). In order to prevail under that statute, plaintiff must establish that

1) the defendant offers or sells a security, 2) in Massachusetts, 3) by making any untrue statement of

-18-

material fact or by omitting to state a material fact, 4) the plaintiff did not know of the untruth or omission and 5) the defendant knew, or in the exercise of reasonable care would have known, of the untruth or omission.   The defrauded purchaser need not prove scienter, negligence[,] reliance [or loss causation].

In re Access Cardiosystems, Inc., 488 B.R. 1, 8, 10 (D. Mass. 2012) aff'd, 776 F.3d 30 (1st Cir. 2015).

The parties dispute whether MUSA applies to the secondary market transactions at issue in this case.  Even assuming that the statute does apply to secondary market transactions, plaintiff's MUSA claim cannot survive summary judgment because plaintiff has failed to offer evidence that BAS made "any untrue statement of material fact" or omitted a material fact that is necessary to make a prior statement not misleading.

Massachusetts law adheres to "a long standing rule of nonliability for bare nondisclosure." Kannavos v. Annino, 356 Mass. 42, 47 (1969).  A defendant is therefore "not liable for simple failure to disclose material information." In re Access Cardiosystems, Inc., 404 B.R. 593, 643 (Bankr. D. Mass. 2009) aff'd, 488 B.R. 1 (D. Mass. 2012).  Liability for omissions arises only 1) where the defendant fails to disclose material information when it has a legal duty to do so and 2) if the alleged omission "renders an otherwise accurate statement misleading." Id.

Tutor Perini has not satisfied either prong of liability. Because the auction failure risk was disclosed accurately, there is no duty to disclose all facts reflecting the degree of risk. See Hill, 638 F.3d at 60.  Plaintiff also has not identified any BAS statements that were rendered misleading by the alleged omissions.  MUSA does not obligate BAS to disclose all facts that "would be interesting, market-wise" but rather only facts "needed so that what was revealed would not be so incomplete as to mislead." Backman v. Polaroid Corp., 910 F.2d 10, 16 (1st Cir. 1990); see also In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1538 (D. Mass. 1991) (acknowledging that omitted information about the financial condition of a bank perhaps "if disclosed, would have altered the general picture of the Bank, but omissions that create a misleading impression...are not sufficient to constitute the basis of a securities action...Plaintiffs must be able to identify affirmative statements that were misleading at the time...or that became misleading by material omission.").

Accordingly, defendants' motion for summary judgment with respect to Count VIII of plaintiff's complaint will be allowed.

### C.   Plaintiff's motion for partial summary judgment

Plaintiff has filed a cross motion for summary judgment with respect to the Massachusetts Uniform Security Act, M.G.L. c. 110A, § 410(a)(2) (Count VIII) and the Massachusetts Consumer

Protection Act, M.G.L. c. 93A (Count V).  Because the Court will

allow summary judgment for the defendants on those claims,

plaintiff's motion will be denied as moot.

<u>**ORDER**</u>

For the foregoing reasons,

1)   defendants' motion for summary judgment (Docket No.
     206) is **ALLOWED;** and

2)   plaintiff's motion for partial summary judgment
     (Docket No. 207) is **DENIED as moot.**


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge

Dated August 12, 2015